| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, November 3, 2023 8:58:32 AM |
| To: | LISA@SCHIFFMANLAW.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Balfour Beatty Investments Claim No. 9303113 Leslie Marcus |
| Attachments: | rs1g43eovbbw6ozhjasu_16487621.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

__B__

Lincoln/Marcus 0089



The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 3, 2023

Lisa Counters
Schiffman Law Office, P.C.
4506 NORTH 12TH STREET
PHOENIX,, AZ 85014

RE:    Long Term Disability (LTD) Benefits
       Balfour Beatty Investments
       Claim #: 9303113
       Claimant: Leslie Marcus

Dear Lisa Counters:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintain the decision to deny benefits beyond October 16, 2021.

**Initial Claim Decision**

Leslie Marcus submitted a claim for her absence from work as of April 13, 2019, as a result of chronic fatigue, depression, panic attacks, and anxiety.  Ms. Marcus' LTD benefits began on October 17, 2019, therefore the change in definition of disability occurred on October 16, 2021 and to receive benefits beyond 24 months she must be disabled from any occupation as defined in the Policy.  Benefits beyond October 16, 2021 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated August 12, 2021. Ms. Marcus was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, you were advised to submit the following information:

*Please submit any additional medical records from any and all providers to support restrictions and limitations that would preclude you from performing any occupation. You may also submit a valid Functional Capacity Evaluation and Independent Medical Exam for review. Please include your request to appeal the decision in writing.*

**Appeal**

In your letter of appeal dated January 27, 2023, you indicated the denial is based on a non-examining paper reviewer and Lincoln Financial's misrepresentation of Leslie Marcus' treating

1  of 9

**Lincoln/Marcus 0090**

provider's opinions.  Additionally, you stated Lincoln Financial refuses to recognize the extent of which Ms. Marcus' diagnoses limit her ability to reliably work on a full-time basis.

In support of her claim, you submitted the following information:

- Copy of Neuropsychological Evaluation performed November 15, 2021
- Treatment notes from Tonia Graham FNP-BC, APRN from May 11, 2021 – January 5, 2023
- Treatment notes from CNS Memory Clinic from September 8, 2021 – November 15, 2021
- August 12, 2021 letter from Tonia Graham  FNP-BC, APRN
- Social Security Administration (SSA) Function Report
- Labs from Sonora Quest Laboratories from May 11, 2021 - October 15, 2022

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, Ms. Marcus' claim was reviewed by Sharon J. Obadia, D.O., an independent physician who is board certified in Internal Medicine.  Dr. Obadia reached out to Tonia Graham to discuss her claim. On July 20, 2021 Graham APRN discussed the claimant's primary diagnoses of myalgic encephalitis/chronic fatigue syndrome and hypermobility syndrome. Dr. Obadia inquired whether Ms. Graham had placed restrictions and/or limitations on the Ms. Marcus' physical activity. Ms. Graham explained that she had not recommended to the claimant that she limit physical activity, but Ms. Marcus reported to Ms. Graham that she has a lot of post-exertional fatigue after physical activity. Dr. Obadia inquired as to whether Ms. Graham felt the claimant is capable of a sedentary job and Ms. Graham explained that she feels sedentary work would be great for the claimant. Ms. Graham explained that Ms. Marcus had recently reported short-term memory issues to her, and Ms. Graham had referred the claimant to a neurologist for this. Ms. Graham explained that the neurology consult was pending at that time. Dr. Obadia asked Ms. Graham if she has noted any abnormal findings on physical examination related to memory loss. Ms. Graham explained that she has not, but she has noticed that the claimant brings her significant other to her appointments and he provides information to Ms. Graham if the claimant is unable to remember the information. At the conclusion of their conversation, Ms. Graham confirmed that she feels the claimant has no physical restrictions other than the reported memory loss and the inability to lift heavy weight above her head due to her cervical spine degenerative disc disease.  Based on her review of the medical records and telephone conversation with primary treating provider, nurse practitioner Tonia Graham, Dr. Obadia concluded Ms. Marcus was currently and permanently capable of full-time work activity with the following restrictions/limitations of sitting over 50% of the time, lifting/carrying up to 10 pounds occasionally, standing/walking occasionally, and no lifting overhead.

During the review of Ms. Marcus' appeal, her claim was reviewed by Eric J. Ewald, M.D., an independent physician who is board certified in Cardiovascular Disease and Internal Medicine. Dr. Ewald contacted Tonia Graham APRN to discuss her claim. On February 7, 2023, NP Graham stated she felt that Ms. Marcus did remain disabled for a variety of issues. She stated Ms. Marcus continues to struggle with chronic fatigue limiting her ability to be physically active and remains genuinely concerned that she may have some underlying autoimmune or neurologic disease that has not yet been formally diagnosed. NP Graham also stated Ms. Marcus has a very deliberate way of walking and is also concerned that on a previous neuropsychological testing it was felt that she had mild dementia and no longer drives as a result. She also states that the patient has a low BMI and

**Lincoln/Marcus 0091**

continues to struggle with cyclic nausea. NP Graham does plan to re-refer the patient back to GI or neurology in the future assuming the patient would be agreeable.

Based on his review of the medical records, Dr. Ewald concluded Ms. Marcus described a multitude of symptoms primarily revolving around chronic fatigue syndrome but also with intermittent chronic nausea, depression/anxiety, and possible mild dementia as evidenced by previous neuropsychological testing, and therefore, some restrictions and limitations may be applicable for the timeframe in question. However, her physical exam and echocardiograms are unremarkable. Dr. Ewald is concerned that there may be a component of secondary gain/malingering, or at least symptom magnification based on the video surveillance report submitted reportedly showing her for 57 seconds ambulating without difficulty entering and exiting the passenger side of an automobile without any obvious gait abnormality, difficulty with locomotion, difficulty with opening or closing a car door, or need for an assist device. Additionally, an investigative report regarding her social media was submitted and reviewed describes her possibly having a home business, where she sells and makes jewelry (items requiring beads stringing such as bracelets/necklaces/pendants etc.), and multiple pictures during a Bahama trip in '21 showing her standing in the water on the beach, lying on the beach, or kneeling on cushions in a motorboat. Dr. Ewald concluded after reviewing the records submitted that only certain restrictions/limitations would be reasonable and expected due to chronic fatigue syndrome.  From the perspective of Internal Medicine, the following restrictions are recommended from October 16, 2021 and beyond of stand/walk/sit/use hands for fine manipulation- as tolerated by the patient in an 4 hours workday due to chronic fatigue; push/pull/carry/lift-up to 15 pounds occasionally and bend/stoop/kneel/climb stairs/reach -as tolerated. Dr. Ewald did not comment specifically on cognitive functioning, as it outside of his field of expertise, but do recognize that previous neuropsychological testing revealed mild dementia and this could present additional restrictions and limitations, but this should be addressed by a board certified neurologist or possibly psychiatrist.

During the review of Ms. Marcus' appeal, her claim was also reviewed by David Nowell, Ph.D., an independent physician who is board certified in Neuropsychology. Dr. Nowell's attempts to reach Dr. Dana Higgins were not successful.  Based on his review of the medical records Dr. Nowell concluded the records do not document a level of psychiatric care consistent with a severe disorder. The records do not document escalation of behavioral health care from October 17, 2021 to the present. The records do not indicate what capacities and limitations Ms. Marcus's treating providers attribute to psychiatric disorder. The records note consistent complaints of cognitive inefficiency, memory problems, and fatigue. A January 2020 neurology consultation included a brief cognitive screening, with performance falling at the low end of the normal range. A September 2021 neuropsychological evaluation noted there were performances within the impaired range, although the report following that evaluation did not review raw scores or standard scores or percentile ranks on all tests administered. The report did include an addendum which allowed for review of some of the tests administered at that exam. Poor performance was noted on a non-verbal recall task, with adequate performance on a list learning task. Performance across index scores on IQ battery fell within normal limits, including scales tapping into working memory and processing speed. Variable performances were noted across indicators on the continuous performance task, with a high number of commission errors and with slightly higher reaction time than is typical. Variable performance is reflected in the report following September 2021; there was insufficient information provided in that report to determine whether there were consistent findings of memory impairment, or consistent findings of attentional impairment. The records indicate there were performance validity indicators included as part of that assessment. These performances were not specifically reviewed in the report

Lincoln/Marcus 0092

or appendix. It is not possible for an independent reviewer to form impression on the basis of these data alone, and review of the total record does not yield a consistent picture of abnormal exam findings or clinician-observed cognitive dysfunction. The records do not indicate Ms. Marcus has been referred for cognitive rehabilitation. From a Neuropsychology perspective, the claimant is able to work full time full duty without restrictions from 10/17/2021 to - and beyond.

During the appeal review, Ms. Marcus's claim was sent for an updated transferrable skills analysis to assess if the previously identified occupations remain viable with the updated restrictions and limitations that were recommended in the new peer review completed by Dr. Ewald. The updated transferrable skills analysis identified the following occupations based on the National Economy labor market, Ms. Marcus' abilities and skill level:

Manager, Title Search $10,388
Manager, Employment $10,520
Manager, Sales $10,625

*Wage Information is based on median 2021 Bureau of Labor Statistical Data

We considered that these occupations would provide wages above her monthly benefit amount.

On March 27, 2023, we sent you a copy of the Peer and Vocational Reviews so that you could review and respond to the new or additional evidence in connection with Ms. Marcus' appeal. Your response was due by April 16, 2023.

In a letter dated March 30, 2023, you reported that you would require additional time to provide information for Ms. Marcus' appeal. On April 19, 2023, we wrote to you granting an extension and requested that you submit any additional information you would like to have considered for Ms. Marcus' appeal by May 1, 2023.

An additional letter from your office dated May 1, 2023, indicated that you would require additional time to provide information, we wrote to you granting an additional extension and requested that you submit any additional information you would like to have considered for Ms. Marcus' appeal by May 10, 2023.

On May 17, 2023 we received new medical evidence from your office and a new letter requesting an extension to May 25, 2023 to provide additional documentation.  A letter was mailed to your office granting an extension to May 25, 2023.

Upon receipt of the additional information received from your office, Ms. Marcus' file was referred for an addendum review, by the independent Internal Medicine and Neuropsychology physicians.

Dr. Ewald concluded the additional records submitted does not alter his previous opinion from an IM perspective. Ms. Marcus has a multitude of subjective symptoms, none of which support a single unifying diagnosis. The additional records reveal essentially unremarkable autonomic testing and brain MRI. Furthermore, Dr. Ewald is not convinced that the records submitted are supportive of true POTS syndrome. She does appear to have some objective degenerative cervical multilevel disc disease on the cervical MRI report, but these findings are not unusual in someone of her age.

**Lincoln/Marcus 0093**

Dr. Nowell concluded the additional records reviewed with the addendum do not alter his opinion as previously stated. As noted in the previous review, there is insufficient information in the report following evaluation to allow an independent reviewer to form impression of capacities and limitations on the basis of the data.

On June 12, 2023, we sent you a letter which included a copy of the addendums performed in connection with Ms. Marcus' request for appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of July 2, 2023.

In a letter dated July 3, 2023, you reported that you would require additional time to provide information for Ms. Marcus' appeal. On July 3, 2023, we wrote to you granting an extension and requested that you submit any additional information you would like to have considered for Ms. Marcus' appeal by July 17, 2023.

On July 18, 2023 we received new medical documents in connection with Ms. Marcus' appeal.

On July 21, 2023 we received a letter from your office requesting an extension to July 28, 2023.

On July 28, 2023, August 5, 2023, August 11, 2023, August 18, 2023, August 28, 2023, September 6, 2023, September 12, 2023, and September 19, 2023, we received letters from your office requesting extensions to provide additional information. On September 20, 2023, we wrote to you granting a final extension and requested that you submit any additional information you would like to have considered for Ms. Marcus' appeal by September 26, 2023.

On September 27, 2023 we received a declaration from Dr. David Saperstein.

Upon receipt of the additional information received from your office, Ms. Marcus' file was referred for an addendum review.

Dr. Ewald concluded in totality, based on his previous reviews and additional letter by Dr. Saperstein, the new documentation does not alter his previous assessment from an internal medicine perspective in regard to restrictions and limitations for the timeframe in question.

On October 9, 2023, we sent you a letter which included a copy of the addendum performed in connection with Ms. Marcus' request for appeal. You were given another opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of October 29, 2023.

To date we have not received any additional information to consider with Ms. Marcus' appeal.

We are aware that Ms. Marcus' claim for Social Security Disability Income benefits is being processed. It should be noted that any ruling by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of Balfour Beatty Investments' Group Disability Income Policy.

**Conclusion**

**Lincoln/Marcus 0094**

We conducted a thorough and independent review of Ms. Marcus' entire claim.  In summary, we acknowledge that she may have continued to experience some symptoms associated with her conditions beyond October 16, 2021.  However, the information received does not contain sufficient exam findings, diagnostic test results or other forms of medical documentation supporting her symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills after that date.

Having carefully considered all of the information submitted in support of her claim, our position remains that proof of her continued disability in accordance with the Policy provisions after October 16, 2021 has not been provided.  Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> *"**Disability**" or "**Disabled**" means:*
>
> *i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
>
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> *"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*
>
> *"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*
>
> *"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
>
> 1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
>
> 2. *an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
>
> 3. *the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

**Lincoln/Marcus 0095**

*Proof must be submitted in a form or format satisfactory to Liberty.*

*"**Regular Attendance**" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.*

**Disability Benefit**

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

*1. Disability;*

*2. Regular Attendance of a Physician; and*

*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

**Discontinuation of the Long Term Disability Benefit**

*The Monthly Benefit will cease on the earliest of:*

*1.  the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;*
*...*

*9. the date the Covered Person is no longer Disabled according to this policy;*

*...*

**Notice and Proof of Claim**

*...*

**2. Proof**
*a. Satisfactory Proof of loss must be given to Liberty no later than 90 days after the end of the Elimination Period.*
*b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must*

**Lincoln/Marcus 0096**

*be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*

*c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.*

*Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.*

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

*1. until 60 days after Proof of claim has been given; or*

*2. more than three years after the time Proof of claim is required.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information you wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is November 3, 2026.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Balfour Beatty Investments' Group Disability Income Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No

**Lincoln/Marcus 0097**

internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį̆į' dóó ná'ookąąh nííní'ą̂ago naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį̆íł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Keisha Scales
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 14099
Secure Fax No.: (603) 334-0401

Lincoln/Marcus 0098