**Admitted Pro Hac Vice**
Iwana Rademaekers (TX Bar No. 16452560)
**LAW OFFICES OF IWANA RADEMAEKERS, P.C.**
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main:  (214) 579-9319
Fax:  (469) 444-6456
Email:  iwana@rademaekerslaw.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Marcus,<br><br>   Plaintiff,<br> vs.<br><br>The Lincoln National Life Insurance Company,<br><br>   Defendant. | Case No. 2:24-cv-00228-ROS<br><br>**DECLARATION OF KAYLA BICK IN SUPPORT OF DEFENDANT'S RESPONSE BRIEF OF THE MERITS** |

1. I, Kayla Bick, serve as Director/Claims Shared Services for The Lincoln National Life Insurance Company ("Lincoln").  I am more than 21 years of age and am competent to testify to the matters contained herein.  My personal knowledge, as well as the files and records maintained by Lincoln in the ordinary course of business, form the basis of this affidavit.

2. As part of my responsibilities for Lincoln, I am familiar with Lincoln's procedures for processing and administering claims for disability benefits under group disability plans, including the claim at issue herein that was submitted by Plaintiff

1

Leslie Marcus ("Marcus"). I am also personally familiar with the manner in which Lincoln maintains files and records, including those that relate to Marcus' claim for long term disability benefits under the employee welfare benefit plan ("the LTD Plan") sponsored and maintained by Balfour Beatty Investments, Inc. ("Balfour Beatty"). I am familiar with and work daily with the construction and interpretation of the various disability plans and policies for which Lincoln administers claims, including the one relevant to the claims of Marcus in the above-styled litigation.

3.      Lincoln issued Group Policy No. GF3-890-464263-01 (the "Policy") to Balfour Beatty as group policyholder. The Policy provided disability benefits to eligible participants in the Plan. As an eligible employee of Balfour Beatty, Marcus was a participant in the Plan, was covered under the Policy, and submitted a claim for benefits from the Plan.

4.      In evaluating claims for benefits under employee benefit plans insured by Lincoln, it is Lincoln's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded, and to pay claims consistently and in accordance with the applicable benefit provisions, so that those claims which are payable under the plan are paid and those which are not payable are not paid.

5.      The employees who make claims decisions on behalf of Lincoln are not evaluated or compensated on the basis of the amount or number of claims paid or denied. Lincoln in no way discourages its employees from paying claims that are covered and payable under the terms of its policies.

6.      The decision to deny Marcus' claim for disability benefits was not motivated by self-interest on the part of Lincoln or by a desire to avoid paying the

2

benefits claimed by Marcus.  Rather, the decision was based entirely on the relevant provisions of the group policy and the medical records and other information contained in the administrative record.

7.     Lincoln has taken a number of steps to separate the claim determination functions from the underwriting/premium functions.  These steps were all in place during the period relevant to Marcus' claim, which is April 13, 2019, to November 3, 2023, and are still in effect today.  First, there is a geographical separation.  Disability case managers are physically located in different offices and are in different cities and states than those employees who make underwriting and premium decisions.  Second, there is departmental and managerial separation.  Disability case managers belong to the Group Disability Claims Department and ultimately report to a Senior Vice President, Chief Claims Officer.  Underwriting Department and ultimately report to a Senior Vice President, Chief Underwriting Officer.  And third, underwriting/premium functions are typically performed prior to the time the insurance contract takes effect, taking into account the size and make-up of the risk to set appropriate rates for the policyholder.  Conversely, the functions performed by disability case managers for a particular policyholder generally occur months and years after the insurance contract takes effect.  Upon renewal, underwriters make rate determinations for a policyholder independently and without direct input from the disability case managers for that risk.

8.     Lincoln has implemented management checks to identify inaccurate decision-making irrespective of whom the inaccuracy benefits.  For example, the administrative record reflects that before the Claims Management Specialist assigned to Marcus' claim sent out Lincoln's letter of August 12, 2021, he first sought the

3

approval of his manager. (*See*, Lincoln/Marcus 54, Claim Note 115 and 116, dated August 11, 2021).  It was only after his manager reviewed and approved such an action that the Claims Management Specialist sent out his letter of August 12, 2021, (s*ee*, Letter from Lincoln's Claims Management Specialist to Marcus, Lincoln/Marcus 1083-1087) informing Marcus that benefits were not payable under the group policy beyond October 16, 2021.  Second, after receiving correspondence from Marcus' counsel indicating an intent to appeal, Lincoln directed the file to an independent appeal review unit.  (*See*, Liberty/Marcus 53, Claim Notes 128-130, dated January 30, 2023.)  After further review, including obtaining additional medical peer and vocational reviews, the appeal review consultant made the determination to uphold the original decision (see, Letter from Lincoln's Claims Resolution Specialist to Marcus' attorney, Lincoln/Marcus 90-98).  These processes demonstrate that Lincoln has implemented management checks and took affirmative steps to promote accuracy.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this __28__ day of May 2025.

_____
Kayla Bick