EXHIBIT 1

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| TIMOTHY SEWELL, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )    Case No. 2:23-cv-00317 |
| THE LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|       Defendant. | ) |

## DECLARATION OF KAYLA BICK

1.  I, Kayla Bick, serve as Director/Claims Shared Services for The Lincoln National Life Insurance Company ("Lincoln"). I am more than 21 years of age and am competent to testify to the matters contained herein. My personal knowledge, as well as the files and records maintained by Lincoln in the ordinary course of business, form the basis of this affidavit.

2.  As part of my responsibilities for Lincoln, I am familiar with Lincoln's procedures for processing and administering claims for Accidental Death and Dismemberment ("AD&D") benefits under group life plans, including the claim at issue herein that was submitted by Timothy Sewell ("Sewell"). I am familiar with and work daily with the construction and interpretation of the various life plans and policies for which Lincoln administers claims, including the one relevant to the claims of Sewell in the above-styled litigation.

3.  Lincoln issued Group Life Insurance Policy No. SA3-890-LF0483-01 (the "Policy") to McLarens, LLC ("McLarens") as Policyholder. The Policy provided life benefits to eligible participants in the Group Life Insurance Plan ("the Life Plan") sponsored and maintained by McLarens. As an eligible employee of McLarens, Sewell was a participant in the Life Plan, was covered under the Policy, and submitted a claim for AD&D benefits from the Life Plan.

> **EXHIBIT**
>
> **A**

4. In evaluating claims for benefits under employee benefit plans insured by Lincoln, it is Lincoln's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded, and to pay claims consistently and in accordance with the applicable benefit provisions, so that those claims which are payable under the plan are paid and those which are not payable are not paid.

5. The employees who make claims decisions on behalf of Lincoln are not evaluated or compensated on the basis of the amount or number of claims paid or denied. Lincoln in no way discourages its employees from paying claims that are covered and payable under the terms of its policies.

6. The decision to deny Sewell's claim for AD&D benefits was not motivated by self-interest on the part of Lincoln or by a desire to avoid paying the benefits claimed by Sewell. Rather, the decision was based entirely on the relevant provisions of the Policy and the accident and medical records and other information contained in the administrative record.

7. Lincoln has taken a number of steps to separate the claim determination functions from the underwriting/premium functions. These steps were all in place during the period relevant to Sewell's claim, which is 2021 through 2024, and are still in effect today. First, there is a geographical separation. Life claim case managers are physically located in different offices and are in different cities and states than those employees who make underwriting and premium decisions. Second, there is a department and managerial separation. Life claim case managers belong to the Group Life Claims Department and ultimately report to a Senior Vice President, Chief Claims Officer. Underwriters belong to the Underwriting Department and ultimately report to a Senior Vice President, Chief Underwriting Officer. And third, underwriting/premium functions are typically performed prior to the time the insurance contract takes effect, taking into account the size and make-up of the risk to set appropriate rates for the policyholder.

DECLARATION OF KAYLA BICK                                                                 2

Conversely, the functions performed by life claim case managers for a particular policyholder generally occur months and years after the insurance contract takes effect. Upon renewal, underwriters make rate determinations for a policyholder independently and without direct input from the life claim case managers for that risk.

8. Lincoln has implemented management checks to identify inaccurate decision-making irrespective of whom the inaccuracy benefits. For example, the administrative record reflects that the Life Claims Examiner sent out Lincoln's letter of January 27, 2023, informing Sewell that benefits were denied payable under the Policy and that after receiving notification from Sewell's counsel appealing that decision to deny benefits, Lincoln directed the file to an independent appeal review unit. (See, Ex. 3, Administrative Record, Lincoln/Sewell 47 (Life Note 52), (Dkt 21-3, Page 4). In the independent Appeal Review Unit, Sewell's appeal was reviewed by a Claim Resolution Specialist. Therefore, a separate and independent unit reviewed Sewell's appeal. After further review, the Claim Resolution Specialist made the determination to uphold the original decision. However, before the Claim Resolution Specialist assigned to Sewell's appeal could close the claim, manager input was sought. (See, Ex. 3, Administrative Record, Lincoln/Sewell 45 (Life Note 61 and Claim Note 6) (Dkt 21-3, Page 2). It was only after the manager reviewed and approved such an action that the Claim Resolution Specialist sent out Lincoln's letter of September 27, 2023, informing Sewell's counsel of the determination to uphold the original decision to deny AD&D benefits under the Policy. Additionally, Lincoln conducted an additional review of documents submitted after the September 27, 2023, decision and this additional review was conducted by a different Claim Resolution Specialist than the individual who conducted the first appeal review (See, Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 715-716, (Claim Notes 9-16) (Dkt 21-4, Pages 3-4). After further review of the additional documentation, the second appeal review consultant made the

**DECLARATION OF KAYLA BICK** 3

determination to uphold the original decision. Once again, however, before the second Claim Resolution Specialist issued a determination on the appeal review, manager input as sought. (See, Ex. 4, Administrative Record Supplementation, Lincoln/Sewell 715 (Claim Notes 14 and 15), (Dkt 21-4, Page 3). It was only after the manager reviewed and approved such an action that the Claim Resolution Specialist sent out Lincoln's letter of August 2, 2024, informing Sewell's counsel of the determination to maintain the denial of AD&D benefits under the Policy. These processes demonstrate that Lincoln has implemented management checks and taken affirmative steps to promote accuracy in claim decisions.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 13th day of September, 2024.

_Kayla Bick_
_____
Kayla Bick

**DECLARATION OF KAYLA BICK**                                                                                      **4**